Green J.
delivered the opinion of the court. •
The bill alledges, that one- William Bowman became indebted to the complainant for goods sold him to the amount *106 0f $5 93G, for which he in 1827 executed his note, parable short time thereafter; that lie put said note into the hands of the defendant, William Wallace, for the purpose of col* ]ecl¡0D} ancj ¡0 get ij:e payment of it better secured; after-wards on the 23d of Nov. 1S30, the said William Wallace, in order to secure the payment of said note, took a new note from Bowman, payable to himself for the sum of $4,706 23, falling due 1st Jan. 1832, and at the same time Bowman executed a deed of trust to the defendant E. H. Foster, for a tract of land in Rutherford county and several ne-groes, the better to secure the payment of said note. That the note was putin the hands of E. II. Foster, by Wm. Wallace, for collection, with his blank endorsement thereon, to enable him to collect the same through the bank, where it was payable, and not for the purpose of transferring any interest to him.
The hill further stated, that Joseph Wallace, another of the defendants, claims an interest in said note, and has given said Foster notice to pay the proceeds to him. Complainant knows not under what pretence the said Joseph Wallace claims the proceeds of said note, but charges, that if any assignment was made by William Wallace to said Joseph Wallace of the proceeds of said note, it was fraudulently done, and that Joseph Wallace had notice, that the proceeds of the note belonged to complainant. The hill charges, that the note was not assigned to Joseph Wallace by William Wallace in the usual course of business or trade. The hill concludes with a prayer that William and Joseph Wallace bo compelled to disclose the nature of Joseph Wallace’s claim to said note, and when, and how it originated? whether he acquired his right in the usual course of trade or business, and what was the transaction in all respects in which he did acquire such right, and whether he had not notice? &c. Prayer that the proceeds of the note he enjoined in the hands of Foster, until the termination of the suit, and then be decreed to complainant.
The answer of Joseph Wallace admits, that Bowman was indebted to complainant, and that the notes on him were put into William Wallace’s hands by complainant for collection, *107 or to get the debt better secured, and that said debt is the same which is secured by the note in controversy, but insists that the note from Bowman to Wm.W ailace was taken for the sole .. benefit of the said William, under an express contract that he was to bo entitled to any security be could obtain from Bowman, bo agreeing to pay the amount secured in two and three years from the month of October or November, 1830. The answer further states, that in September, 1S30, the said William Wallace was indebted to die firm of Wallace and Hobbs, of which firm Joseph Wallace was a partner, in a large sum of money, and to secure the payment of the said money, the said William Wallace transferred to defendant, Joseph Wallace, about the 2Gth of November, 1830, anote on "William and Samuel Bowman for $2000, due 1st July, 1830, payable to complainant, and by him endorsed, and also at the same time transferred to him the-note in controversy on William Bowman for $d,706 25, by delivering to defendant, Joseph Wallace, the receipt of Foster and Fogg for the same. Defendant denies that he bad at the time cf the transfer, or until a long time afterwards, any notice or suspicion that the notes or bill single, or either oí them belonged to complainant, or that he had any interest in them; the said William informing defendant that they were his own property. These transfers were honestly made, and on the 18lh day of January, 1831, defendant gave a written notice to said F. II. Foster, that he was the holder of, and had the interest in said receipt of Fos*er anc! Fogg.
The answer further states, that the complainant is indebted to the defendant, Joseph Wallace, in a large sum of money, about $2,300 for money paid by defendant to Adams, Reynolds & Co., for th.e use of complainant, for a bill of exchange drawn for the accommodation of the complainant on William Wallace, for $4,200, which bill, complainant agreed to pay at. maturity, and failed therein. Said sum above mentioned defendant has paid, and is liable to pay the balance to the holders; and as the complainant has become insolvent, he claims to tetain in equity the amount of said bill of exchange and interest, even if complainant were entitled *108 to the note specified in the receipt of Foster and Fogg. He denies all fraud, &e.
The answer of William Wallace admits, that previous to to the 1st January, 1830, complainant put into his hands for collection notes on William Bowman, to the amount of about $6000. This defendant stales, that afterwards in the month of October or November, 1830, he saw complainant in Lou-, isville, Kentucky, when the complainant proposed to this defendant to take the said claims on Bowman, and pay for them in three equal instalments from that time — the. complainant being doubtful of Bowman’s solvency. To winch proposition defendant agreed, provided he could see upon his return to Nashville any probable means of securing the payment of said claims. When defendant returned to Nashville, he concluded to take the complainant at his offer, and accordingly wrote to him to that effect,
This defendant in further answering, repeats in substance the answer of Joseph Wallace. The other answers are not material to the questions involved in the cause.
The evidence shows that the defendant, Joseph Wallace, on the 27th of August, 1830, drew a bill of exchange for $4,250 on William Wallace, of New Orleans, for the accommodation of complainant, who undertook to pay the same when at maturity. This was not done, and the defendant, Joseph Wallace, has paid part of said sum and is responsible to the holders for the balance.
Upon these facts, it is contended in the first place by the defendants, that William Wallace’s answer establishes a contract between himself and Alexander, the complainant, that said Wallace was to take the nofes on Bowman for his own use and pay to complainant the amount in one, two or three years, and that therefore the bill single in controversy was executed to William Wallace for his own benefit, and that the proceeds thereof rightfully belong to Joseph Wallace, by virtue of the transfer of the receipt of Foster and Fogg to him.
We do not think that William Wallace’s answer is to be taken as evidence of this contract. It is often very difficult to determine what in an answer is responsive to the bill and *109 what is stated in avoidance. If a matter stated m an answer . . be a direct and proper reply to an interrogation ol the plninant, then it is evidence, though it be in favor of the defendant, and unless rebutted by proof, must be taken as establishing the fads stated. But if the facts be not staled in direct reply to the bill, but in avoidance of some allegation the defendant was compelled to admit, then the answer is not evidence of the-matter in avoidance.
In this case the bill does not in the stating part of it, al-ledge any fact in relation to the contract staled in William Wallace’s answer. It states that Bowman was indebted to complainant; that his claims were placed in the hands of William Wallace for collection; that Wallace took the note and security in question from Bowman in discharge of so much due complainant, and that the deed and bill single were placed in Foster’s hands, that the money might be collected for complainant’s benefit. All these facts are admitted by the defendant, except that the bill single was placed in Foster’s hands lor the benefit of the complainant. This he denies, and this is all the answer; this the statement of the bill required him to make. No discovery as to the nature of his own right and how it was derived is sought from him, and consequently all his statement about the contract with complainant is voluntary, and is made by him to avoid what he saw would be the complainant’s right to the note, notwithstanding his denial. Nor is this statement in the answer a direct and proper reply to any interrogation of the complainant. Although the stating part of the bill may not have required the answer, yet if the complainant had chosen to make a witness of defendant, and had propounded such interrogatories as to make the matter stated in this answer a direct reply to them, then the answer would have been evidence. But the interrogatories in this bill have all of them relation to Joseph Wallace’s title to the note, how derived, .upon what-consideration, whether with notice of complainants’ right to it, and that William Wallace had no interest therein. None of these interrogatories call for a disclosure of the facts in question. The information respecting Joseph Wallace’s plaims and the transactions attending its origin would be the *110 53m('’ whether William Wallace or the .complainant were -equitably entitled to the proceeds of the note. The facts stated in William Wallace’s answer are not at ail in reply to any question relative to the manner in which Joseph Wallace became connected with the transaction. We are therefore of opinion, that the complainant is entitled to the proceeds cf the bill single in controversy.
2. The next question raised is, whether Joseph Wallace is not entitled to a decree for so much of this’ fund as the complainant Alexander may owe him.
This fund was in such a situation, that according to the law it would have gone into the hands of Joseph Wallace, had not the complainant come into the court of chancery for its aid. One of the best maxims of a court of chancery is, that “he who seeks equity must do equity.” The complainant comes into this court to take this fund out of the hands of defendant; ought he not, before he is permitted to do so, discharge any debt due defendants from him?
We think he ought, and more especially so, as it is alledged in the answer, that he is insolvent? But the complainant’s counsel insists, that in this case Joseph Wallace ought not to have equity, because as he alledges, he was guilty of a fraud in placing the fund in its present situation. This view of the subject seems to have governed the chancellor in making his decree. We do not perceive upon what evidence his h mor founded that opinion. The hill interrogates the defendants especially upon this subject, and the answers of both the Wallaces’ contain lull circumstantial and direct denials of all fraud charged. These answers are evidence of the matters thus drawn from the defendants, and they must stand acquitted of fraud unless there be other testimony — none other is produced. We cannot conceive, therefore, upon what ground it is contended, that Joseph Wallace is guilty of fraud.
Let the decree of the chancellor be reversed, and let an account be taken between complainant and Joseph Wallace, until the coming in of which, let all other matters be reserved.
Decree reversed.